BALDWIN. The H. P. See Cases Nos. 6,811 and 6,812.

BALDWIN, (BANK OF NEWBERRY v.) See Case No. 892.

---

## Case No. 797.

### BALDWIN v. BERNARD et al.

[5 Fish. Pat. Cas. 442;[1] 9 Blatchf. 509, note; 2 C. G. 320.]

Circuit Court, S. D. New York. April 22, 1872.

PATENTS FOR INVENTIONS—EQUITY PLEADING — ENTITLING AFFIDAVITS—BONNETS.

1. It is irregular, in a suit in equity, to swear a person to an affidavit entitled in the suit, before the bill has been filed.

2. An affidavit may properly be taken before the filing of the bill, but it must not be entitled in the suit.

3. A hat may infringe the Blake patent, and yet be seamless throughout.

4. The essence of the invention of Blake being, that the product of the action of the dies to which the thing is last subjected is the completed body of the bonnet, embossed in imitation of straw, and shaped and ready for practical use, as the body of a bonnet, without further covering or ornamentation, the patent is infringed if the last embossing die gives the ultimate shape to the bonnet, although such dies may be of the same shape as a die to whose shaping action the bonnet had been previously subjected.

5. The question of withholding an injunction, if the defendant will take a license, considered.

[In equity. Bill by Nathan A. Baldwin against Henry O. Bernard and others for infringement of letters patent No. 33,978.

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

Motion for provisional injunction. Granted.] Suit brought upon letters patent for an "improvement in the manufacture of coverings for the head," granted to S. A. Blake, December 24, 1861, and more particularly referred to in the report of the case of Baldwin v. Schultz, [Case No. 804.] Before the motion was heard the defendants moved to dismiss the application, on the ground that the affidavit of one Eicke, relied on to prove a sale by the defendants of the hats alleged to infringe, was sworn to April 6, but the bill was not filed until April 8, and the subpoena was not issued until April 12.

S. F. Gordon and George Gifford, for complainants.

C. B. Stoughton and S. D. Law, for defendants.

BLATCHFORD, District Judge. It is undoubtedly irregular to swear a person in a suit before the bill has been filed. The irregularity consists in having the affidavit sworn to under the title of a suit, in which no bill has been filed. If the title had been omitted, there would have been no irregularity. This is continually done in applications for habeas corpus and mandamus, and to swear falsely in such affidavits is indictable as perjury. The suit is commenced when the bill is filed. Eicke's affidavit ought not to have been entitled in the suit. On this ground the affidavit of Eicke should be excluded, but I will permit it to be resworn. The parties must be considered as having had reasonable notice of it. They have had a copy of it.

The affidavits were then read, and, after argument on both sides, the following opinion was orally pronounced:

BLATCHFORD, District Judge. If I have correctly understood the counsel for the defendants, I see nothing in this case to distinguish it from the one in which Schultz and Hecht were defendants. I have listened carefully to everything that has been urged, and it has made no impression different from that produced upon my mind in the other case. The counsel for the defendants has entirely misapprehended the scope and effect of the former decision as to the Blake patent. It is very true that Blake, in his patent, describes that particular sort of hat which required, in order to make it, that there should be an opening cut in it. But that particular form of hat constituted no part of the invention of Blake. A hat may infringe the patent, and yet be seamless throughout. The essence of the invention, as it appears in the patent, is this: that the product of the action of the dies to which the thing is last subjected is the completed body of the bonnet, embossed in imitation of straw, and shaped and ready for practical use, as the body of a bonnet, without further covering or ornamentation.

Now, this is true of the bonnet of the defendants. It is embossed fit for use, and shaped to the form in which the last dies used in its production leave it. It is of no consequence that other dies may have been used previously to shape it. It is no matter if it had been shaped by fifty dies previously. Bernard, in one of his affidavits, himself says that the last die used must be of the same shape as the previous one. This constitutes an infringement. This last die is the one that does the embossing. When the embossing is done by dies that have a shape, that shape is given by the embossing dies. Bernard, in his affidavit, says that it is absolutely indispensable that the embossing dies should have the same shape as the previous dies; and the embossing dies give the ultimate shape, because their shape is not altered. In my former decision I said: "It is claimed, on the part of the plaintiffs, that, according to the description in the specification of the Blake patent, the product of the action of the dies is the completed body of a bonnet, embossed in imitation of straw, and fit for use as the body of a bonnet, in the shape given to it by the dies, and without further ornamenting or covering its surface;" and I said I thought these views of Blake's invention were correct. The defendants do not afterward cover their hats, do not afterward ornament them, do not alter them in any manner. If the brim and top of the hat, as well as the body, are embossed by the dies, it is none the less an infringement. I also said, in that decision, that the proper construction of the claim of Blake's patent is, "that it claims a bonnet, the body of which is embossed, in imitation of straw or other braid, by dies, which, at the same time, give to it its ultimate shape." Its ultimate shape. It is no matter how many dies have previously given shape to it. It may have been one; it may have been twenty. It makes no difference what number. This last embossing die of the defendants is the one that gives the ultimate shape to the bonnet, because it is of the same shape as the previous die. The defendants say that there are two operations in the production of their bonnet. This is nothing but trying to evade the patent by splitting the thing into two—making two operations where only one was necessary. That will not do. A case very similar to this, in this particular, was lately tried in the district of Connecticut—Wallace v. Holmes, [Case No. 17,-100]—in which the patent sued on was for a lamp-burner, to be used with a chimney, and so described in the patent. The defendants made and sold the burner; but, because they did not make or sell the chimney with it, they said they did not infringe. But it was held they did, as all the purchaser would have to do would be to buy a glass chimney next door and put it in. So, in this case, there was a purpose of infringing, I should say, in making two operations where only

one is necessary. Courts always look with suspicion upon such a transaction. As to the Roger and Ledion patent, if that patent covered this invention, as to one thickness of muslin, it might be a patentable improvement to make the bonnet of two thicknesses. The defendants say that there is nothing in the fact of there being two thicknesses. Why do they not make their bonnets out of one thickness? There must be something in the using of two thicknesses. None of the parties who make the bonnets have used one thickness. The defendants may make as many hats as they please out of one thickness of muslin. In regard to the other suit—the suit against Schultz and Hecht [Baldwin v. Schultz, Case No. 804]—it is true that the parties on both sides in that suit were satisfied that the hearing should be had upon affidavits. The plaintiffs took the defendants' affidavits. The defendants took the plaintiffs'. The plaintiffs were willing to accept the defendants' affidavits as true, just as they were. The defendants did not care to cross-examine the deponents who made affidavits for the plaintiffs. It is not alleged here that any one of the witnesses knew anything else that could be brought out. Blake fixed 1860 as the date of his invention, and the defendants do not undertake to show that Blake did not make the invention when he said he did. The defendants say that if you take their hat from the first die and put it into their embossing die, you will get no salable hat; but, if you put the coating or putty upon the hat, after using the first die, and then use the embossing die, you will have a salable hat. But the point is, that they put the putty on, and then emboss the hat. They say that there is no infringement, because they do not emboss directly upon the muslin. True it is that, looking on the completed hat, the eye rests simply on the coating or putty, but the corrugations extend into and through the muslin, and show, as is here apparent, on the inside of the hat. This operation has an effect, over and beyond the mere ornamentation. There is a durability and stiffness in the hat made of this fabric. It is very light, yet, at the same time, it has the requisite stiffness. Now, this durability and stiffness and lightness are due to the fact that the hat is made out of two or three thicknesses of muslin, stamped in this way. If these defendants do not make the article out of one thickness of muslin, there must be something in this idea of Blake's of using two thicknesses. At first blush, one would say that there could not be any difference between a fabric made of one thickness of muslin and a fabric made of two thicknesses, with paste between them. Yet these defendants do not use one thickness. They do use two thicknesses. Hats made of one thickness look to me just as good, but the evidence and the conduct of the defendants go to show me

that they are not, and that there is something in the use of two thicknesses which makes their employment necessary and useful. As to the coating, the bonnet is none the less an infringement because a coating is put upon it. Putting on this coating or putty may be an improvement—perhaps it is a useful improvement. But it is a mere addition. The defendants may have something more than Blake has, but it is none the less apparent that they have what Blake has. The same questions were before me in the Schultz and Hecht case. That case was fully argued. There is nothing which leads me to suppose that their counsel did not defend them to the best of his ability. Every point involved seems to have been presented. Besides I studied that case thoroughly, and gave more time and attention to it than to almost any other case that has lately come before me. Especially did I thoroughly study it, after its second argument, to make myself familiar with it, in view of the fact that, after having first given a decision one way, I felt called upon to give one the other way. If the defendants in the Schultz and Hecht case would not permit the case to be opened otherwise, there was certainly nothing wrong or fraudulent in making an arrangement to secure such re-opening. If a mistake had been made, it was the duty of the counsel, to himself, his clients, and the court, to get the case re-opened, if possible. If this had not been done, it would all have had to come before the court at another time. If there was any suppression of truth or lack of full consideration, the court ought to look into it. So, too, if any prior patent should be brought before me, or if any new testimony should be offered, it would be entitled to consideration, just as if the other case had never been heard. But there is nothing of that character. In regard to the suggestion about a license, the defendants knew of this patent, and had notice of the proceedings in the other case. They engaged in this business with their eyes open. They took the risk upon themselves. They asked for a license, but they did not ask for it on the ordinary terms. They wanted to impose conditions upon the licensers. It is undoubtedly true that, in some cases, and under certain circumstances, I have said I would not grant an injunction, except on refusal of the defendants to accept a license. I belive such was the fact in the Car-Brake Case, [Hodge v. Hudson River R. Co., Case No. 6,560,] the Fat Acid Case, [Tilghman v. Mitchell, Case No. 14,042,] and, if I recollect correctly, in one of the Hoop-Skirt Cases, [Doughty v. West, Case No. 4,028;] but in all of those cases the plaintiffs were perfectly open and free to grant licenses to anybody. The more licenses they had, the better it was for them. But that is not the case with these plaintiffs. They undertake to show, in their affidavits, why it would be prejudicial to them for these defendants to

have a license. (Mr. Law stated that the defendants do not want a license, such as is offered them, because they can not honestly live up to its terms.) The conduct of these defendants, in this regard, is certainly very honorable, and I should think they were just such persons as the plaintiffs would desire to be licensees. It does not very clearly appear, I confess, how granting a license would injure these plaintiffs. In Waller's affidavit, it is not very clearly expressed. (Mr. Gordon called attention to the fact that the plaintiffs are themselves large manufacturers, and that they and their present licensees can supply the market, and that this appears in the bill of complaint, as well as in the affidavits.) I did not observe that the plaintiffs are themselves manufacturers of the bonnets. They are entitled to the injunction.

[NOTE. Patent No. 33,978 was granted to S. A. Blake December 24, 1861. For another case involving this patent, see Balwin v. Schultz, Case No. 804.]